**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| JACOBS ENGINEERING GROUP, INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| CONSOLIDATED RAIL CORPORATION, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Jacobs Engineering Group Inc. ("Jacobs"), by and through undersigned counsel, submits the following Complaint for Declaratory Judgment against Consolidated Rail Corporation ("CRC"). For its Complaint, Jacobs states as follows:

**NATURE OF THE CASE**

1. This is an action under 28 U.S.C. § 2201 in which Jacobs seeks a declaratory judgment as to the rights and legal relations between itself and Defendant CRC concerning an actual controversy existing between the parties over two lawsuits in the Philadelphia Court of Common Pleas ("Philadelphia Litigation"), both arising out of a fatal job site incident on June 5, 2016. Jacobs, which CRC engaged to perform certain engineering support and field observation services, is currently a co-defendant in the Philadelphia Litigation with CRC's parent company. Defendant CRC, however, is not a party to the Philadelphia Litigation.

2. The parties dispute which of two contracts between them governs their respective rights and obligations – including indemnity and dispute resolution – with respect to the Philadelphia Litigation: a contract executed in 2008, or a contract executed in 2016. Jacobs

seeks a declaration that the 2016 contract superseded the 2008 contract, and that the 2016 contract governs.  The issue is critically important to Jacobs: the 2016 contract makes it manifestly clear that Jacobs has no obligation to indemnify CRC (or its parent company) for liability in connection with the Philadelphia Litigation, and it requires any disputes between Jacobs and CRC relating to the contract to be litigated in the U.S. District Court for the Eastern District of Virginia (or state court in Norfolk, Virginia).

## PARTIES AND JURISDICTION

3. Jacobs is a Delaware corporation with its principal place of business in Texas.

4. CRC is a Pennsylvania corporation with its principal place of business in Pennsylvania.

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Jacobs and CRC are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and attorneys' fees.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because (a) a substantial part of the events giving rise to the claim herein, including but not limited to contract negotiations, occurred in this district, and (b) CRC is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

7. CRC is a railroad company and the primary operating subsidiary of Conrail Inc. ("Conrail").  Conrail is jointly owned by CSX Corporation and Norfolk Southern Corporation ("Norfolk Southern").  Norfolk Southern, as agent for CRC, executed the two contracts at issue. Jacobs does not have a contract with Conrail.

- 3 -

8. For several years, Jacobs has provided, at different times on various projects, one, some or both of engineering and/or construction management services for CRC under so-called "on-call" contracts, including the two contracts at issue here. These on-call contracts set forth the overarching terms governing the parties' relationship, including dispute resolution, indemnity in the event of lawsuits, apportionment of liability, and insurance requirements. They also set forth the categories of professional services that CRC could request Jacobs to perform and the rate schedule for those services.

9. The on-call contracts do not set forth specific services or scopes of work to be performed by Jacobs on a project. Rather, when CRC wants to engage Jacobs for a given project or scope of work, it does so by issuing a task order, which outlines the specific professional services it wants Jacobs to provide. The on-call contracts contemplate that CRC could request Jacobs to provide one, some or all of the following professional services on a project: engineering and/or construction management services.

**A. The 2008 Agreement**

10. On November 13, 2008, Jacobs and CRC entered into the Engineering Services Agreement (the "2008 Agreement"), an on-call agreement under which Jacobs could provide, at CRC's election, engineering design, in-house engineering and construction management services. A true and correct copy of the 2008 Agreement is attached hereto as Exhibit 1.

11. The 2008 Agreement, as indicated above, was an on-call contract. It set forth the type of professional services that CRC could elect Jacobs to perform and provided the general terms and conditions governing the parties' relationship and services to be rendered. Specific scopes of work to be performed by Jacobs were set forth in task orders issued by CRC pursuant to the 2008 Agreement.

12. Section 3.1 of the 2008 Agreement provided that "[t]he period of performance for this Agreement shall begin 1 December 2008 and shall terminate on 31 December 2009 unless sooner terminated in accordance with Appendix A." Although it was set to expire at the end of 2009, the parties extended the period of performance, typically for one-year periods, through a series of change orders.

### B. Jacobs and CRC Negotiate a New Contract

13. In late 2015, the parties began negotiating a new on-call contract to replace the 2008 Agreement. At the time, the most recent extension of the 2008 Agreement was set to expire on December 31, 2015.

14. On December 29, 2015, two days before the 2008 Agreement was to expire and with the replacement contract not yet complete, the parties agreed upon a three-month extension. The parties memorialized that extension in Change Order No. 7, which extended the period of performance for the 2008 Agreement until March 31, 2016.

15. Over the next few months, the parties continued to exchange proposed edits to the new contract.

16. By late March 2016, the parties had agreed on the terms of the new contract. To allow sufficient time to complete the contracting process, the parties agreed to a ten-day extension of the 2008 Agreement. Change Order No. 8 memorialized that extension, extending the period of performance of the 2008 Agreement until April 10, 2016. This was the last and final extension of the 2008 Agreement.

- 5 -

### C. The 2016 Agreement

17. CRC and Jacobs entered into the Engineering and Design Services Agreement (the "2016 Agreement"), the new on-call contract, on March 31, 2016. A true and correct copy of the 2016 Agreement is attached hereto as Exhibit 2.

18. The 2016 Agreement clearly and unambiguously superseded the 2008 Agreement.

19. In Section 7.1, the parties expressly agreed that the 2016 Agreement "is the entire agreement between the parties and supersedes all prior agreements, written or oral, relating to the subject matter hereof." The 2016 Agreement – an on-call contract for Jacobs to provide engineering design and/or construction management services at CRC's election – undoubtedly relates to the same subject matter as the 2008 Agreement.

20. In addition, the period of performance for the 2016 Agreement began on April 11, 2016, picking up where the 2008 Agreement, as extended, left off: April 10, 2016. This was no coincidence. The parties executed the final two change orders to the 2008 Agreement as part of the contracting process *for the 2016 Agreement*. Given Jacobs' ongoing services for CRC, it was imperative that there be no temporal gaps between the two agreements.

### D. The Philadelphia Litigation

21. The Philadelphia Litigation arises out of a fatal construction incident that occurred approximately two months after the 2008 Agreement expired and the 2016 Agreement took effect.

22. On June 5, 2016, one of CRC's contractors, Cornell & Company, Inc. ("Cornell"), performed work on the Delair Bridge, a vertical-lift railroad bridge that crosses the Delaware River between Philadelphia and Pennsauken, New Jersey. CRC had engaged Cornell to replace

the steel cables attached to the bridge counterweights, which are used to lift the bridge span up and down (the "Ropes Project").

23. Cornell used hydraulic jacks – which it obtained from a third party – to support the lift span while it replaced steel cables. One of the hydraulic jacks (and/or a t-fitting attached to the hydraulic jack) failed, creating an explosion that caused Cornell employee Walter Lenkowski to fall to his death and injured Mark Spriggs, another Cornell employee.

24. This incident is the subject of two lawsuits currently pending in the Philadelphia Court of Common Pleas: one on behalf of Mr. Lenkowski's estate (*Lenkowski v. Parker-Hannifin Corp., et al.*, August Term, 2017, Docket No. 3098) and one by Mr. Spriggs (*Spriggs v. Parker-Hannifin Corp., et al.*, Philadelphia County Court of Common Pleas, October Term, 2017, Docket No. 1195).

25. Both plaintiffs in the Philadelphia Litigation assert claims against Conrail, Jacobs, Actuant Corporation d/b/a and/or Enerpac (the alleged manufacturer of the hydraulic jack), Parker-Hannifin Corp. (the alleged manufacturer of the t-fitting attached to the hydraulic jack), W.B. Equipment Service Corp. d/b/a and/or W.B. Equipment Service Co., Inc. (who allegedly owned the hydraulic jack and rented it to Cornell). Importantly, CRC – the entity with whom Jacobs entered the 2016 Agreement – is not a party to either case, although parties to the Philadelphia Litigation, including Conrail, a CRC affiliate, are seeking to use the agreement between Jacobs and CRC as a basis for both liability and indemnification.

26. With respect to Conrail and Jacobs, the plaintiffs assert negligence claims alleging that both parties failed to ensure Cornell utilized adequate fall protection measures during the steel cable replacement. Plaintiffs press these claims against Jacobs despite the fact that none of Jacobs' responsibilities for the Ropes Project included fall protection or safety generally. As the

parties that hired Cornell and controlled the job site, CRC and Conrail – not Jacobs – were responsible for any shortcomings in Cornell's safety measures.

27. Nonetheless, Conrail has filed a crossclaim against Jacobs for contractual indemnification in each of the Philadelphia Litigation matters and has repeatedly demanded that Jacobs defend Conrail with respect to each case. Jacobs has refused on the ground that safety – especially the safety procedures of Cornell, a fellow contractor – were clearly outside the scope of Jacobs' responsibilities.

## COUNT I
### (Declaratory Judgment that the 2016 Agreement Superseded the 2008 Agreement)

28. Jacobs realleges and incorporates Paragraphs 1 through 27 as if fully set forth in this Count I.

29. Jacobs seeks a declaration by this Court determining Jacobs' and CRC's rights and obligations vis-à-vis the Philadelphia Litigation. Specifically, Jacobs seeks a declaration that the 2016 Agreement superseded the 2008 Agreement, and that the 2016 Agreement – not the 2008 Agreement – governs the parties' rights and obligations with respect to the Philadelphia Litigation.

30. An actual case or controversy exists between the parties as to Jacobs' indemnity obligations and duty to defend, or lack thereof, with respect to the Philadelphia Litigation.

31. Declaratory judgment would serve a useful purpose in clarifying the parties' rights due to material differences between the contracts; it would also help to clarify the obligations and responsibilities of one or more parties involved in the Philadelphia Litigation, which, in turn, may assist in the resolution of the various parties' claims.

32. Although the indemnity provisions in the 2008 Agreement and 2016 Agreement are similar, Appendix B to the 2016 Agreement expressly disclaims Jacobs' liability with respect to the safety precautions of other contractors:

> Consultant will not bear any responsibility or liability for the acts or omissions of any construction contractors subcontractors or other consultants hired by the Railway ('Other Contractors'). Consultant will not be responsible for the safety precautions and programs in connection with the work of such Other Contractors since these are solely the Other Contractors' responsibility under those contracts between the Railway and such Other Contractors[.]

33. The two contracts also mandate different forums for resolving disputes between the parties, including disputes over indemnity.

34. The 2008 Agreement contains an arbitration provision requiring "[a]ny claim, dispute or controversy arising out of or relating to this Agreement, the parties relationship under this Agreement or the breach of this agreement" to be determined by arbitration in Norfolk, Virginia. Ex. 1, Appx. A, § 12(a). In the event of third-party claims, the arbitration provision allows either party to "initiate arbitration . . . to determine prospective liability between the parties upon facts" not reasonably in dispute. Ex. 1, Appx. A, § 12(d).

35. The 2016 Agreement, on the other hand, does not include an arbitration provision. Instead, it includes the following forum selection clause:

> Each of the parties (i) consents to submit itself to the personal jurisdiction of any state court located in the City of Norfolk, Virginia or the U.S. District Court for the Eastern District of Virginia (and appellate courts from any of the foregoing) (the 'Chosen Courts') in the event any dispute arises out of this Agreement or the transactions contemplated by this Agreement, (ii) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any Chosen Court and (iii) agrees that any action relating to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the Chosen Courts. EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY.

Ex. B, Appx. B, § 12.

36. Accordingly, Jacobs is entitled to a declaration that the 2016 Agreement superseded the 2008 Agreement, and that the 2016 Agreement governs the parties' rights and obligations with respect to the Philadelphia Litigation.

## PRAYER FOR RELIEF

WHEREFORE, Jacobs prays that the Court:

A. Enter judgment against CRC in favor of Jacobs declaring that (a) the 2016 Agreement superseded the 2008 Agreement, (b) the rights and obligations between Jacobs and CRC vis-à-vis the Philadelphia Litigation are governed by the 2016 Agreement, not the 2008 Agreement; and

B. Award Jacobs such other relief as the Court deems just and appropriate.

Dated: November 6, 2020    **AEGIS LAW GROUP LLP**

          /s/
Serine Consolino (Va. Bar. No. 95481)
801 Pennsylvania Ave., N.W.
Suite 740
Washington, D.C. 20004
Phone: (202) 706-7031
Fax: (202) 735-5071
sconsolino@aegislawgroup.com

*Counsel to Jacobs Engineering Group Inc.*