IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JACOBS ENGINEERING GROUP, INC., )<br>    Plaintiff, )<br>        v. )<br>CONSOLIDATED RAIL )<br>CORPORATION and CONRAIL, INC., )<br>    Defendants. )<br>                                   ) | Civil Action No. 2:20CV554 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, Stay Proceedings ("Motion to Dismiss") (ECF No. 16). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant Defendants' Motion to Dismiss.

**I. FACTUAL ALLEGATIONS**

Jacobs Engineering Group, Inc. ("Jacobs" or "Plaintiff") is a Delaware corporation with its principal place of business in Texas. (Am. Compl. ¶ 3, ECF No. 12.) Consolidated Rail Corporation ("CRC") is a railroad company and the primary operating subsidiary of Conrail, Inc. ("Conrail") (collectively "Defendants"). (*Id.* ¶ 8.) Conrail is jointly owned by CSX Corporation and Norfolk Southern Corporation ("Norfolk Southern"), the latter of which is based in Norfolk, Virginia. (*Id.*) For several years, Jacobs has provided engineering and/or construction management services for CRC under so-called "on-call" contracts. (*Id.* ¶ 9.) These on-call contracts set forth the overarching terms governing the parties' relationship, including dispute resolution, indemnity in the event of lawsuits, apportionment of liability, and insurance

1

requirements. (*Id.*) On November 13, 2008, Jacobs and CRC entered into an Engineering Services Agreement (the "2008 Agreement"), an on-call agreement under which Jacobs could provide engineering design, in-house engineering, and construction management services to CRC. (*Id.* ¶ 11.) The 2008 Agreement provided that "[t]he period of performance for this Agreement shall begin 1 December 2008 and shall terminate on 31 December 2009 unless sooner terminated in accordance with Appendix A." (*Id.* ¶ 13.) Although the 2008 Agreement was set to expire at the end of 2009, the parties extended the period of performance, typically for one-year periods, through a series of change orders. (*Id.*) In late 2015, the parties began negotiating a new on-call contract to replace the 2008 Agreement. (*Id.* ¶ 14.) On December 29, 2015, two days before the 2008 Agreement was set to expire and with the replacement contract not yet complete, the parties agreed upon a three-month extension. (*Id.* ¶ 15.) The three-month extension extended the period of performance until March 31, 2016. (*Id.*) By late March 2016, the parties had agreed on the terms of the new contract but agreed to a ten-day extension of the 2008 Agreement to allow time to complete the contracting process. (*Id.* ¶ 17.) On March 31, 2016, CRC and Jacobs entered into the Engineering and Design Services Agreement (the "2016 Agreement"). (*Id.* ¶ 18.)

On June 5, 2016, one of CRC's contractors, Cornell & Company, Inc. ("Cornell"), performed work on the Delair Bridge, a vertical-life railroad bridge that crosses the Delaware River between Philadelphia and Pennsauken, New Jersey. (*Id.* ¶ 23.) CRC had engaged Cornell to replace the steel cables attached to the bridge counterweights, which are used to lift the bridge span up and down (the "Ropes Project"). (*Id.*) Cornell used hydraulic jacks—which it obtained from a third party—to support the lift span while it replaced steel cables. (*Id.* ¶ 24.) In the course of replacing the steel cables, one of the hydraulic jacks failed, creating an explosion that caused the death of Cornell employee, Walter Lenkowski. (*Id.*) Another Cornell employee, Mark Spriggs,

2

was injured by the explosion. (*Id.*) This incident is the subject of two lawsuits currently pending in the Philadelphia Court of Common Pleas: one on behalf of Mr. Lenowski's estate, and the other by Mr. Spriggs. (*Id.* ¶ 25.) These two lawsuits were consolidated for the purposes of discovery and trial (the "Philadelphia Litigation"). (*Id.*) Both plaintiffs in the Philadelphia Litigation assert claims against Conrail, Jacobs, Actuant Corporation d/b/a and/or Enerpac (the alleged manufacturer of the hydraulic jack), Parker-Hannifin Corp. (the alleged manufacturer of the t-fitting attached to the hydraulic jack), and W.B. Equipment Service Corp. d/b/a and/or W.B. Equipment Service Co., Inc. (who allegedly owned the hydraulic jack and rented it to Cornell). (*Id.* ¶ 26.) Initially, CRC, the entity with whom Jacobs entered the 2016 Agreement, was not a party to either case. (*Id.*) With respect to Conrail and Jacobs, the plaintiffs in the Philadelphia Litigation assert negligence claims alleging that both parties failed to ensure Cornell utilized adequate fall protection measures during the steel cable replacement. (*Id.* ¶ 27.) Additionally, Conrail filed a crossclaim against Jacobs for contractual indemnification in each of the Philadelphia Litigation matters and demanded that Jacobs defend Conrail with respect to each case. (*Id.* ¶ 28.) Conrail also filed a crossclaim against Jacobs for breach of contract, asserting that Jacobs "had an obligation to procure insurance naming Defendant Conrail, Inc. as an additional insured, as such must provide Defendant Conrail, Inc. with a defense and indemnity as an additional insured." (*Id.* ¶ 29.) However, Conrail's crossclaims did not specify which contract served as the basis of its claim. (*Id.* ¶ 30.)

Jacobs alleges that substantially all discovery motions practice conducted by Jacobs in the Philadelphia Litigation is attributable to its defense against the plaintiffs' claims. (*Id.* ¶ 32.) Jacobs also filed a motion for summary judgment in the Philadelphia Litigation seeking dismissal of the plaintiffs' claims and all crossclaims. (*Id.* ¶¶ 33-34.) The Philadelphia court dismissed Jacobs'

motion for summary judgment as well as all other defendants' motions for summary judgment, including Conrail. (*Id.* ¶ 35.)

Jacobs brings suit in this Court seeking "a declaratory judgment as to the rights and legal relations between itself and Defendants CRC and Conrail concerning an actual controversy existing between the parties over two lawsuits in the [Philadelphia Litigation]." (*Id.* at 1.)

## II. PROCEDURAL HISTORY

On November 6, 2020, Plaintiff filed a Complaint against CRC (ECF No. 1). On February 4, 2021, CRC filed a Motion to Dismiss (ECF No. 9). On February 18, 2021, Plaintiff filed a Response to CRC's Motion to Dismiss (ECF No. 11). On February 25, 2021, Plaintiff filed an Amended Complaint against CRC and Conrail (ECF No. 12). On March 11, 2021, CRC filed a Motion to Dismiss the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) or in the Alternative, Stay Proceedings ("Second Motion to Dismiss") (ECF No. 16). On March 22, 2021, Conrail filed a Notice of Joinder in Defendant CRC's Second Motion to Dismiss (ECF No. 18), notifying the Court that Conrail was joining in CRC's Second Motion to Dismiss. The Notice of Joinder also contained a "Supplemental Statement" that informed the Court of developments in the Philadelphia Litigation. (Notice of Joinder at 1, ECF No. 18.) On March 25, 2021, Plaintiff filed a Memorandum in Opposition to CRC's Second Motion to Dismiss (ECF No. 20). On March 31, 2021, Defendants filed a Reply (ECF No. 22). On April 5, 2021, Plaintiff filed an Opposition to Conrail's Notice of Joinder (ECF No. 23).[1] On January 14, 2022, Plaintiff filed a Status Report (ECF No. 28) notifying the Court that the Philadelphia court denied Conrail's Motion to Amend. (Status Rep. at 1, ECF No. 28.) The Status Report also informed the Court that

---

[1] On April 12, 2021, Defendants filed an Opposition to Plaintiff's Opposition (ECF No. 24), arguing that Plaintiff's Opposition was improperly filed as parties cannot file a sur-reply without leave of Court. (Defs.' Opp. at 1-2, ECF No. 24.) Defendants therefore asked that the Court strike Plaintiff's Opposition to Conrail's Notice of Joinder. (*Id.*) The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system.

4

the Philadelphia court had bifurcated the crossclaims between Conrail and Jacobs from the trial in the Philadelphia Litigation that is set to begin on May 2, 2022. (*Id.* at 2.) Additionally, the Pennsylvania state court ordered that Conrail be deemed the owner of Delair Bridge for the purposes of the May 2, 2022 state trial only. (*Id.*)

### III. LEGAL STANDARD

The Fourth Circuit has recognized that "a defendant may challenge subject matter jurisdiction in one of two ways." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). First, "the defendant may contend 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based,'" under a Rule 12(b)(6) consideration. *Id.* Second, the defendant "may challenge jurisdiction under Rule 12(b)(1) by asserting that the jurisdictional allegations of the complaint are not true." *Princeton Excess & Surplus Lines Ins. Co. v. Immigr. Ctrs. of Am. - Farmville, LLC*, No. 3:12CV895, 2013 WL 6246366, at *3 (E.D. Va. Nov. 21, 2013) (quoting *Kerns*, 585 F.3d at 192). "In that instance, the court may consider facts related to jurisdiction by going beyond the allegations of the complaint and may indeed hold an evidentiary hearing." *Id.* Here, Defendants' jurisdictional challenge is brought pursuant to Rule 12(b)(1). The burden of proving subject matter jurisdiction is on Plaintiff. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). In determining whether jurisdiction exists, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

Here, Plaintiff asserts subject matter jurisdiction based on diversity under 28 U.S.C. § 1332 and brings this action under 28 U.S.C. § 2201, the Declaratory Judgment Act. (Am. Compl. ¶¶ 1, 6.) In such a case, the Court must first determine whether it has subject matter jurisdiction, then

whether an actual controversy exists, and then whether to exercise its discretion to render a declaratory judgment. *Norfolk Dredging Co. v. Phelps*, 433 F. Supp. 2d 718, 721 (E.D. Va. 2006). "The Declaratory Judgment Act is an enabling statute that grants discretion to the district courts, not an absolute right to the litigant." *Id*. (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). "The Declaratory Judgment Act is a procedural statute that does not itself confer jurisdiction upon a court." *Id*. (citing *Mut. Life Ins. Co. of New York v. Moyle*, 116 F.2d 434, 437 (4th Cir. 1940)). "Thus, in a federal Declaratory Judgment Act case, the court must have jurisdiction over the case independent of the declaratory judgment remedy sought by the plaintiff." *Id*.

"The Declaratory Judgment Act provides that '[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167 (4th Cir. 1990) (quoting 28 U.S.C. § 2201(a)). Two conditions must be satisfied in order for a district court to have jurisdiction to issue a declaratory judgment. *Id.* "First, the dispute must be a 'case or controversy' within the confines of Article III of the United States Constitution—the 'constitutional' inquiry. *Id.* "Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate—the 'prudential' inquiry." *Id.*

## IV. ANALYSIS

The Supreme Court has explained that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites[.]" *Scottsdale Ins. Co. v. J.L. Contracting, LLC*, No. 1:19-CV-177, 2020 WL 10090727, at *4 (N.D.W. Va. Aug. 21, 2020)

6

(citing *Wilton*, 515 U.S. at 277).  Here, the Court notes first that Defendants do not challenge the Plaintiff's allegation in paragraph six of the Amended Complaint that the Court has subject matter jurisdiction based on diversity pursuant to 28 U.S.C. § 1332.  Based on its own review of the jurisdictional allegations, the Court concludes that subject matter jurisdiction based on diversity exists in this action.  Next, the Court assumes, arguendo, that this dispute is a "case or controversy" that satisfies the "constitutional inquiry."  Even so, the Court declines to exercise jurisdiction as explained herein.

"[A] declaratory judgment action is appropriate [1] 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . [2] when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).[2]  Where, as here, "a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy 'can better be settled in the proceeding pending in the state court.'" *Id*. at 257 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)).  This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and 'whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding.'" *Id*. "Guided by these general principles—as well as 'the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts"—the Fourth Circuit has set forth a number of specific factors for district courts to consider." *Id*. (citing *Nautilus Ins. Co. v. Winchester Homes, Inc*., 15 F.3d 371, 376 (4th Cir.1994)).

---

[2] These two factors are sometimes referred to as the *White* factors.  913 F.2d at 168.

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ](iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and (iv) ] whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

*Id.* (quoting *Nautilus Ins. Co.*, 15 F.3d at 377). The Court will examine each of the *Nautilus* factors and address the *White* factors.

### a. The Strength of the State Interests in Hearing this Dispute

Defendants argue that Pennsylvania has a strong state interest in hearing this dispute because the parties have been engaged in the Philadelphia Litigation for more than three years,[3] the dispute exclusively involves local parties, and the underlying claims arose out of an accident that occurred in Pennsylvania. (Defs.' Mem. Supp. Mot. Dismiss at 12, ECF No. 17.) Additionally, they contend that Plaintiff heavily relied on Pennsylvania law in its previously denied motion for summary judgment. (*Id.*) They also note that, although the Pennsylvania court has not yet decided whether Pennsylvania or Virginia law controls the contractual interpretation dispute, it has considered both Pennsylvania and Virginia law. (*Id.*) They claim that the Pennsylvania state court has a strong interest in "resolving all litigation stemming from a single controversy in a single court system," instead of "try[ing] a controversy by piecemeal, or [trying] particular issues without settling the entire controversy." (*Id.* at 13 (quoting *Mitcheson v. Harris*, 955 F.2d 235, 238-39 (4th Cir. 1992)).) Defendants argue that resolving which contract controlled at the time that the accident occurred would not terminate the entire controversy, but would intrude on Pennsylvania's established interest in resolving a complex and fundamentally local dispute, upon which it already

---

[3]The Philadelphia Litigation was initiated in mid-to-late 2017, and Defendants filed their Motion to Dismiss in early 2021.

twice ruled with regard to the contractual interpretation and indemnity issues. (*Id.*) Plaintiff argues that Pennsylvania does not have a strong interest in deciding the instant contractual dispute because both the 2008 and 2016 Agreements are governed by Virginia law. (Pl.'s Opp. at 23, ECF No. 20.) It argues that this Court, on the other hand, located in Virginia, is familiar with the state's law, and is in a better position to interpret the agreements between the parties. (*Id.*)

The Fourth Circuit has long "recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'" *Mitcheson*, 955 F.2d at 239 (quoting *Quarles*, 92 F.2d at 325. "For the federal court to charge headlong into the middle of a controversy already the subject of state court litigation risks '[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation.'" *Id.* Plaintiff asserts that the applicability of Virginia law and this Court's familiarity with Virginia law support its position. However, as stated by Plaintiff in its motion for summary judgment in the Philadelphia Litigation, "because Pennsylvania and Virginia law are substantively the same with regard to issues of contract interpretation, the analysis is the same whether the Court applies Pennsylvania or Virginia law." (ECF No. 17-2 at n.18.) Consequently, the Court gives little weight to the applicability of Virginia contract interpretation law. Pragmatic concerns of efficiency and comity are equally important considerations. *See Mitcheson*, 955 F.2d at 239. The Philadelphia Litigation was filed in August of 2017 and has been pending in Pennsylvania state court for almost five years; it also involves numerous defendants, claims, and crossclaims between the parties. (*See* Defs.' Mem. Supp. Mot. Dismiss at 3; ECF No. 17-5 at 9.) The Pennsylvania state court will ultimately determine the allocation of liability among the parties in the Philadelphia Litigation, and such questions of liability also impact the obligations of the parties in the instant

action. As such, the Pennsylvania state court's strong state interest in "resolving all litigation stemming from a single controversy in a single court system," weighs in favor of dismissal of this action. *Mitcheson*, 955 F.2d at 239.

### b. Whether the Issues Raised in the Federal Action Can More Efficiently be Resolved in the Court in Which the State Action is Pending

Defendants argue that the Pennsylvania state court could more efficiently resolve this dispute than a Virginia federal court. (Defs.' Mem. Supp. Mot. Dismiss at 13.) Defendants allege that Plaintiff failed to disclose to this Court that despite all of the information available to the Pennsylvania court, the state court nonetheless denied Plaintiff's motion for summary judgment and subsequent motion for reconsideration, deciding that there are still issues of material fact relating to which contract controls—questions that must be resolved by a jury. (*Id.* at 14.) They contend that it would intrude upon basic notions of federalism and judicial efficiency for a federal court to take that prerogative away from a Pennsylvania jury and fully re-litigate the exact same issue in Virginia. (*Id.*)

Plaintiff argues that this Court can resolve the instant contractual dispute more efficiently than the Pennsylvania court. (Pl.'s Opp. at 24.) It contends that since the 2008 Agreement includes an arbitration provision, the threshold question of which contract applies must be determined before any claims under those contracts can be resolved. (*Id.*) Further, it argues that "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." (*Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)).) Plaintiff argues that given this Court's familiarity with both Virginia and federal law, it is in a superior position to promptly resolve the instant contractual issue.

When considering this factor, the court "must employ a careful inquiry into 'the scope of the pending state court proceedings, including such matters as whether the claims of all parties in

interest to the federal proceeding can satisfactorily be adjudicated in that proceeding.'" *Scottsdale Ins. Co.*, 2020 WL 10090727 at *7 (citing *Nautilus*, 15 F.3d at 378-79). Here, the crossclaims in the Philadelphia Litigation concerning the contractual relationship between Plaintiff and Conrail appear to include a number of factual disputes. (*See* Defs.' Reply at 2-3, ECF No. 22.) The parties have also conducted a number of depositions in the Philadelphia Litigation, some of which include deposition testimony regarding the parties' contractual dispute. (*Id.*) It is apparent that due to the extensive record that has accumulated in the Pennsylvania state court, the state court can more efficiently resolve the dispute between the parties in the instant case. *Goodville Mut. Cas. Co. v. Doby*, No. 2:19-CV-607, 2020 WL 2602203, at *2 (E.D. Va. May 21, 2020) ("While the Court in a declaratory judgment action may make its own evidentiary findings, the state court may more efficiently do so with more extensive discovery and with a jury as the fact finder."); *Scottsdale Ins. Co.*, 2020 WL 10090727 at *8 ("[A]fter examining the scope of the state court proceedings and finding that discovery has already commenced in the state court proceedings, [the court finds] that the issues raised in this federal declaratory action can be more efficiently resolved in the pending state proceedings."). Furthermore, the state court action includes a number of defendants and issues that are not present in the instant action. (Am. Compl. ¶¶ 26-28.) Thus, although the issuance of a declaratory judgment may settle part of the controversy between Plaintiff and Defendants, it certainly would not settle the entire matter. *Allstate Prop. & Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 690 (N.D.W. Va. 2013) ("This court has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a particular controversy by piecemeal, or to try particular issues without settling the entire controversy.'") (quoting *Mitcheson*, 955 F.2d at 239). Given the scope of the Philadelphia Litigation, this factor also supports dismissal.

### c. Whether Permitting the Federal Action to go Forward Would Result in Unnecessary "Entanglement" Between the Federal and State Court Systems

Defendants argue that the Philadelphia Litigation has included extensive discovery and two summary judgment motions on the same contractual interpretation and indemnity issues that Plaintiff now attempts to bring before this Court. (Defs.' Mem. Supp. Mot. Dismiss at 16.) Additionally, they contend that Plaintiff already briefed, argued, and lost a summary judgment motion on the exact issue it presents to the Court now. (*Id.*) Defendants argue that the question of which contract actually controls is very much a live factual dispute in the Philadelphia Litigation that should be heard by a Pennsylvania jury. (*Id.*) Further, until Plaintiff filed the Amended Complaint in this action, Plaintiff was the only party involved in both the state court action and this present federal action. (*Id.* at 17.)

Plaintiff argues that the declaratory judgment action concerns three discrete matters of contractual interpretation that can be resolved with minimal entanglement with the Philadelphia Litigation. (Pl.'s Opp. at 25.) It contends that to the extent that the instant case would create entanglement, it would be with Conrail's contractual crossclaims, which it argues were wrongfully filed in Pennsylvania in the first place. (*Id.*) Plaintiff asserts that it is not asking the Court to make any factual findings as to the events of the accident at issue in the Philadelphia Litigation or the Philadelphia plaintiffs' claims. (*Id.*) Rather, Plaintiff is asking this Court to interpret the contracts executed by Plaintiff and CRC in order to determine the legal obligations between Plaintiff and CRC/Conrail. (*Id.*)

"Entanglement" occurs when there are significant "overlapping issues of fact or law." *Scottsdale Ins. Co.*, 2020 WL 10090727 at *8. Here, the contractual dispute between Plaintiff and Defendants is already under consideration in the Philadelphia Litigation. Of particular concern is the unique disposition of the Philadelphia Litigation regarding CRC and Conrail. (*See* ECF No.

18-1.) The Pennsylvania court denied Conrail's motion to amend, bifurcated the claims and crossclaims for contribution and indemnity to be determined at a proceeding separate from the May 2, 2022 jury trial, and deemed Conrail the owner of the bridge at issue.[4] (ECF No. 28-1 at 2.) Consequently, it is unclear what will become of CRC as the alleged owner of the bridge within the scope of the indemnity and contribution claims following the conclusion of the May 2, 2022 trial. The Pennsylvania state court is in a much better position to resolve such a unique situation, and it appears that this Court's involvement would lead to confusion and unnecessary entanglement with the Philadelphia Litigation. As such, this factor also favors dismissal.

### d. Whether the Declaratory Judgment Action is Being Used Merely as a Device for "Procedural Fencing"

Defendants argue that Plaintiff is clearly attempting to forum-shop for a more favorable jurisdiction because the Pennsylvania court already heard and decided the very same issue that Plaintiff now attempts to re-litigate—twice. (Defs.' Mem. Supp. Mot. Dismiss at 17.) Specifically, Plaintiff filed a lengthy motion for summary judgment on the issue of whether it must indemnify Conrail and its affiliates in the pending injury suit. (*Id.*) The state court denied Plaintiff's motion for summary judgment and Plaintiff's subsequent motion for reconsideration. (*Id.*) Defendants argue that now Plaintiff brings the same issue to this Court in a transparent attempt to get a second chance at winning judgment in its favor. (*Id.*)

Plaintiff argues that it did not forum shop as it filed this action in the contractually designated forum. (Pl.'s Opp. at 26.) Plaintiff avers that Defendant's "second chance" accusation does not make any sense because this action concerns the legal relationship between Jacobs and CRC/Conrail. (*Id.*) Plaintiff also claims that the summary judgment in the Philadelphia Litigation

---

[4] While bifurcation of the analysis of duty to defend and indemnity issues normally mitigates the risk of undue entanglement, the uncertainty as to how the Pennsylvania court will treat CRC in this context supports dismissal.

was directed at the Pennsylvania plaintiffs' claims against Jacobs and whether Jacobs owed a legal duty to the Pennsylvania plaintiffs. (*Id.*)  Because the Pennsylvania court denied Plaintiff's motion without explanation, the parties can only speculate at the basis for the court's ruling. (*Id.*)

"This factor typically favors abstention where there is an indication that a party 'raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum.'" *Allstate Ins. Co. v. Rochkind*, No. 15-1546, 2016 WL 3855635, at *5 (D. Md. July 15, 2016) (quoting *Nautilus*, 15 F.3d at 380.).  Here, there is little indication that Plaintiff raced to this Court in an effort to resolve the present issues in a more favorable forum, and the Court finds no evidence of procedural fencing. As such, this factor does not weigh against or in favor of dismissal.  Regardless, the first, second, and third *Nautilus* factors weigh against exercising jurisdiction.

    e.  The *White* Factors

The *White* factors provide that a court should ask two questions when making such a prudential decision: "(1) whether the judgment will 'serve a useful purpose in clarifying the legal relations in issue'; or (2) whether the judgment will 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" 913 F.2d at 168 (internal citations omitted).  Here, the declaratory judgment sought could serve a useful purpose by clarifying the parties' obligations based on the operative contract.  However, the same issue of which contract is operative is also before the Pennsylvania court and as such, a declaratory judgment in this Court would be duplicative. *Id.* (discussing the concerns for judicial economy when evaluating the *White* factors).  Furthermore, because of the unique disposition of the Philadelphia Litigation—as discussed above—the judgment would not terminate all aspects of the uncertainty giving rise to the proceeding.  While the declaratory relief sought could serve a useful

purpose in clarifying the legal relations at issue, the remaining uncertainty and concerns regarding judicial economy pursuant to *White* and the *Nautilus* considerations weigh against exercising jurisdiction.

## V. CONCLUSION

For the reasons detailed above, the Court declines to exercise jurisdiction in this action, and Defendants' Motion to Dismiss (ECF No. 16) was granted by Order issued on March 31, 2022.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

/s/
Roderick C. Young
United States District Judge

Norfolk, Virginia
Date: April 14, 2022